# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CEDAR RAPIDS DIVISION

| | | |
|---|---|---|
| JORGE NEIDER SANCHEZ ESTUPIÑAN,<br><br>        Petitioner,<br><br>vs.<br><br>MARKWAYNE MULLIN, et al.,[1]<br><br>        Respondents. | | No. 26-CV-59-CJW-KEM<br><br><br><br>**ORDER** |

_____

Petitioner Jorge Neider Sanchez Estupiñan's petition for writ of habeas corpus is before the Court. (Doc. 2). Respondents filed a response. (Doc. 10). Petitioner filed replies. (Doc. 14 & 20). For the following reasons, the Court **grants-in-part and denies-in-part** petitioner's petition for writ of habeas corpus and **orders** that respondents provide him with a bond hearing. Petitioner's motion to proceed in forma pauperis is **denied as moot**. (Doc. 1). The motions for immediate release are **dismissed**. (Docs. 3 & 8).

## I.    *BACKGROUND*

Petitioner is a citizen of Venezuela. (Doc. 13-1, at 3). On May 6, 2023, he entered the United States at or near Miami. (*Id.*). He was released on Venezuelan Humanitarian Parole ("VHP").[2] (*Id.*). On February 10, 2025, he applied for asylum. (*Id.*). *See* 8 U.S.C. § 1158.

---

[1] Pursuant to Federal Rule of Civil Procedure 43(c)(2), Secretary Mullin is automatically substituted for Kristi Noem.

[2] Although respondents do not provide information on VHP, generally, it allowed Venezuelan nationals to enter the United States temporarily. *See Noem v. Doe*, 145 S.Ct. 1524, 1525 (2025) (Jackson, J., dissenting) ("Under the 'CHNV' program, individuals from these conflict-ridden

Case 1:26-cv-00059-CJW-KEM    Document 22    Filed 04/21/26    Page 1 of 11

On December 21, 2025, petitioner was arrested and charged with operating while under the influence ("OWI") in Linn County, Iowa. *See* Iowa Code § 321J.2(2)(a). Following that arrest, Immigrations and Customs Enforcement ("ICE") terminated his VHP. (*Id.*). He was then issued a Notice to Appear ("NTA") charging him with being inadmissible for being present in the United States without being admitted or paroled and for failing to possess the required valid immigration documents. (*Id.*; Doc. 13-2); *see* 8 U.S.C. § 1182(a)(6)(A)(i) ("An alien[3] present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible[.]"); 8 U.S.C. § 1182(a)(7)(A)(i)(I) ("[A]ny immigrant at the time of application for admission who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or

---

countries receive 'parole' status for up to two years, which allows them to live in the United States and, in some cases, work here lawfully. Parole is discretionary by statute."); *Nat'l TPS All. v. Noem*, 798 F.Supp.3d 1108, 1119–1127 (N.D. Cal. 2025) (providing background); *see also Parole for Cubans, Haitians, Nicaraguans, and Venezuelans (CHNV Parole Processes)*, United States Citizenship and Immigration Services, https://www.uscis.gov/save/current-user-agencies/guidance/faqs-on-the-effect-of-changes-to-parole-and-temporary-protected-status-tps-for-save-agencies ("DHS implemented the CHNV parole programs, which permitted citizens or nationals of Cuba, Haiti, Nicaragua, and Venezuela, and their immediate family members, with a confirmed U.S.-based supporter to request authorization to travel to the United States to be considered for parole into the United States for a temporary period of up to two years. Under these categorical parole programs, potentially eligible beneficiaries were granted advance authorization to travel to a U.S. port of entry (POE) in the interior of the country to seek a discretionary grant of parole.").

[3] The United States Code and the accompanying federal regulations use the term "alien." To maintain consistency with the statutory and regulatory text, the Court will use the same term in this Order.

2

other suitable travel document, or document of identity and nationality . . . is inadmissible.).

On February 5, 2026, petitioner pled guilty to the charge for the mandatory minimum sentence. *See State v. Sanchez Estupinan*, OWCR12398 (Linn Cnty. Iowa Dist. Ct.); (Doc. 13-3). On February 12, 2026, an immigration judge denied petitioner's request for bond, finding that the judge did not have jurisdiction. (Doc. 2, at 11; Doc. 13-1, at 3). On March 16, 2026, petitioner filed the instant petition with the Court. (Doc. 2). On April 6, 2026, respondents filed a response. (Doc. 10). They also provided the Court with a declaration from Jarrett Venters and Exhibits B and C. (Docs. 13-1, 13-2, 13-3). On April 10 and April 14, 2026, petitioner filed replies. (Doc. 14 & 20). Petitioner remains in ICE custody at the Linn County Correctional Center.

## II. LEGAL STANDARD

"Habeas is at its core a remedy for unlawful executive detention." *Munaf v. Green*, 553 U.S. 674, 693 (2008). Habeas corpus relief is available to those "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c). The right to challenge the legality of a person's confinement "through a petition for a writ of habeas corpus . . . extents to those persons challenging the lawfulness of immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2022) (citing *Presider v. Rodriguez*, 411 U.S. 475, 485 (1973); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); and *Demore v. Kim*, 538 U.S. 510, 517 (2003)). The petitioner bears the burden of proving by a preponderance of the evidence that their detention is unlawful. *Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025); *Walker v. Johnston*, 312 U.S. 275, 286 (1941); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("[T]he burden of proof under § 2241 is on the prisoner."); *Odell v. Hudspeth*, 189 F.2d 300, 302 (10th Cir. 1951) (stating that the burden of proof was upon the petitioner).

### III.    DISCUSSION

Petitioner argues that his continued detention without a bond determination violates the applicable statutes as well as the Due Process Clause of the Fifth Amendment.  (Doc. 2, at 6).  Before addressing the statute, the Court takes up three initial matters.

### A.    *Motion to Proceed in Forma Pauperis*

On March 16, 2026, petitioner filed a document that the Clerk of Court filed as a motion to proceed in forma pauperis.  (Doc. 1).  Petitioner did not attach the required prison trust account statement.  In its initial review order, the Court directed petitioner to either refile a corrected motion to proceed in forma pauperis with the prison trust account statement attached or to pay the $5 filing fee.  On March 26, 2026, petitioner paid the filing fee.  As such, petitioner's motion to proceed in forma pauperis is **dismissed as moot**.  (Doc. 1).

### B.    *Filings by Petitioner's Wife*

As the Court first noted in its initial review order, multiple documents in the case file were filed by petitioner's wife.  *See* (Doc. 4, at 1).  On March 19, 2026, petitioner's wife filed an Emergency Motion for Immediate Release and supporting documentation.  (Doc. 3).  On April 3, 2026, she filed a supplement to that motion with additional documentation.  (Doc. 7).  On April 6, 2026, she filed a second Emergency Motion for Immediate Release.  (Doc. 8).[4]  On April 10, 2026, she filed an Urgent Notice and Plea for Immediate Release.  (Doc. 17).  On April 13, 2026, she filed supporting documentation.  (Doc. 19).  And on April 15, 2026, she filed a Notice of Ongoing Medical Emergency and Evidentiary Blockade.  (Doc. 21).

---

[4] To the extent that this motion alleges that staff at the Linn County Correctional Center violated petitioner's constitutional rights, the Court notes that petitioner has a pending claim under Section 1983 in a separate case before the Court, 26-CV-84.

A party may proceed pro se or be represented by a licensed attorney admitted to practice before the court, but a party may not proceed represented by a nonparty layperson. Although pro se individuals have an absolute right to represent themselves, pro se parties may not represent the interests of other parties. 28 U.S.C. § 1654; *see also Crozier for A.C. v. Westside Cmty. Sch. Dist.*, 973 F.3d 882, 887 (8th Cir. 2020) (explaining "[n]on-attorney parents cannot litigate pro se on behalf of their minor children, even if the minors cannot then bring the claim themselves"); *Knoefler v. United Bank of Bismarck*, 20 F.3d 347, 348 (8th Cir. 1994) (providing that "[a] nonlawyer . . . has no right to represent another entity"); *Cabrera v. State of N. Dakota Workforce Safety & Ins. Fund*, No. 1:18-cv-242, 2020 WL 1068110 (D.N.D. March 5, 2020) (non-attorney wife may not represent her husband's estate in ADA action).

Petitioner's wife is not an attorney licensed to practice in front of this Court. Thus, the Court does not consider the documents filed by petitioner's wife, and the emergency motions for immediate release are **dismissed**. (Docs. 3 & 8).

### C. Motion to Appoint Counsel

Petitioner asks the Court to appoint counsel to represent him. (Doc. 16). "A district court may appoint counsel for a habeas petitioner if it 'determines that the interests of justice so require.'" *Wiseman v. Wachendorf*, 984 F.3d 649, 655 (8th Cir. 2021) (quoting 18 U.S.C. § 3006A(a)(2)(B)). "In exercising its discretion, the district court should consider the legal complexity of the case, the factual complexity of the case, and the petitioner's ability to investigate and present his claims, along with any other relevant factors." *Hoggard v. Purkett*, 29 F.3d 469, 471 (8th Cir. 1994). "It is well-settled that, while there is no Sixth Amendment right to counsel, aliens have a statutory right to counsel at their own expense, 8 U.S.C. § 1229a(b)(4)(A)[.]" *Al Khouri v. Ashcroft*, 362 F.3d 461, 464 (8th Cir.2004) (internal citation removed); *see also United States v.*

5

*Torres-Sanchez*, 68 F.3d 227, 230 (8th Cir. 1995) (stating that "there is no Sixth Amendment right to appointed counsel" in immigration proceedings).

Here, the Court finds that it can resolve the factual and legal issues presented on the record before it. The Court likewise finds that petitioner has been able to investigate and present his claims pro se. Thus, petitioner may retain his own counsel, but the Court declines to appoint counsel for him at the people's expense. Thus, petitioner's motion to appoint counsel is **denied**. (Doc. 16).

### D.    Statutory Argument

Before getting to petitioner's constitutional claim, the Court first addresses petitioner's claim that he is detained under Title 8, United States Code, Section 1226(a), which permits release on bond or a person's own recognizance. (Doc. 2, at 6). Respondents contend that, on the contrary, "[p]etitioner is subject to mandatory detention under § 1225(b)" because, first, before he "was granted discretionary parole, he was subject to removal or detention under 8 U.S.C. § 1225(b)(1)" and, second, because he "is also an applicant for admission, subject to detention under § 1225(b)(2)." (Doc. 6, at 3–4).

While this case was pending, the Eighth Circuit issued its opinion in *Herrera Avila v. Bondi*, No. 25-3248, 2026 WL 819258 (8th Cir. Mar. 25, 2026). After conducting statutory interpretation of both Title 8, United States Code, Sections 1225(b)(2)(A) and 1226(a), the Eighth Circuit determined that Section 1226(a), which permits discretionary release on bond, does not govern the detention of aliens apprehended inside of the United States who have not been lawfully admitted. *Id*. at *9. Rather, those aliens fall under the category contemplated by Section 1225(b)(2)(A), which requires mandatory detention for aliens not lawfully admitted. *Id*. at *11–12. The Court is bound by Eighth Circuit precedent. *Harrington v. Wilber*, 670 F.Supp.2d 958, 967 (S.D. Iowa 2009) ("This Court is obligated to abide by the decisions of the Eighth Circuit Court of Appeals,

6

because such decisions are controlling until overruled by the Eighth Circuit en banc, by the Supreme Court, or by Congress." (cleaned up)).

Although petitioner was admitted under VHP, ICE terminated that status on December 22, 2025, and, therefore, petitioner has now been "returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). Therefore, petitioner is now, again, an applicant for admission despite his previous VHP status, and, under controlling precedent, petitioner is detained under Section 1225(b)(2)(A), not 1226(a).

### E.     *Due Process Clause Argument*

Next, petitioner argues that his "continue[d] civil detention without an individualized custody review has become unreasonable" and thus violates the Due Process Clause of the Fifth Amendment. (Doc. 2, at 6). Respondents claim that "[p]etitioner's detention during removal proceedings is also consistent with due process." (Doc. 6, at 4). Petitioner reiterates his Due Process Clause claim in his reply, arguing that his "lawful entry [outweighs] an administrative classification used maliciously to keep me locked up without a bond hearing." (Docs. 14 & 20). The Court addresses this argument next.

"[O]ur immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality." *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958). More specifically, the Supreme Court has found that the Due Process Clause extends to all persons present in the United States regardless of their immigration status. *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025); *accord Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) ("[T]he Fifth Amendment entitles aliens to due process of law in the context of removal proceedings."). Thus, aliens have due process rights to life, liberty

7

and property. U.S. Const., amend. V; *Mathews v. Diaz*, 426 U.S. 67, 77 (1976). "This is because once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Hernandez Marcelo v. Trump*, No. 25-cv-00094, 2025 WL 2741230, at \*8 (S.D. Iowa Sept. 10, 2025) (citing *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)).

"In the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *Mathews*, 426 U.S. at 79–80. And "[d]etention is necessarily a part of th[e] deportation procedure." *Carlson v. Landon*, 342 U.S. 524, 538 (1952). At the same time, once the government opts to provide a liberty interest, it cannot arbitrarily revoke that interest without due process of law. *See Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). "A person's liberty is equally protected by the due process clause, even when the liberty itself is a creation of the State." *Id*. at 558. This applies to administrative agencies as well, and "an administrative agency may not apply a new rule retroactively when to do so would unduly intrude upon reasonable reliance interests." *Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 61 n.12 (1984). A person released from custody "has at least an implicit promise" that his release "will be revoked only if he fails to live up to the parole conditions." *Morrissey. v. Brewer*, 408 U.S. 471, 482 (1972).

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). To determine exactly the parameters of that opportunity to be heard the Court balances:

(1) the private interest that will be affected by the official action; against
(2) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail; and

(3) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards.

*Id.* at 335 (cleaned up).

Regarding the two interests weighed and the first factor, "the interest in being free from physical detention by one's own government" "is the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Put another way, "freedom from imprisonment lies at the heart of the liberty that the Due Process Clause protects" *Zadvydas*, 533 U.S. at 690 (cleaned up); *accord Barrajas v. Noem*, No. 25-cv-00322, 2025 WL 2717650, at *6 (S.D. Iowa Sept. 23, 2025) (applying this rule to immigration detention). Regarding the second factor, "the Court considers 'whether the challenged procedure creates a risk of erroneous deprivation of individuals' private rights and the degree to which alternative procedures could ameliorate these risks.'" *Gunaydin v. Trump*, 784 F.Supp.3d 1175, 1187 (D. Minn. 2025). Lastly, in looking at the risk of erroneous deprivation, courts consider the costs of additional procedure "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

Here, petitioner acquired a liberty interest in release on his own recognizance when the government released him on VHP in 2023. The government has now arbitrarily revoked that interest by detaining him without demonstrating danger or flight risk. *See Betancourth v. Tate*, No. 4:26-cv-01169, 2026 WL 638482, at *4–5 (S.D. Tex. Mar. 6, 2026) (finding that the re-detention of an alien who was released on her own recognizance with conditions without a bond hearing violated procedural due process because of that previous release); *Alvarez-Rico v. Noem*, No. 4:26-CV-00729, 2026 WL 522322, at *5–6 (S.D. Tex. Feb. 25, 2026) (finding the same in part because "a noncitizen who was previously released on a set of conditions has a strong liberty interest in avoiding re-

9

detention"). Thus, given petitioner's strong interest in release and the relatively minimal burden on the government in providing a bond hearing, the *Mathews* factors favor providing petitioner's a bond hearing.

Respondents cite to cases analyzing the due process requirements of detention under Title 8, United States Code, Section 1226(c) to argue the contrary. *Demore v. Kim*, 538 U.S. 510, 523 (2003) (analyzing the detention of an alien with a "a long criminal record, involving drug crimes, attempted robbery, attempted burglary, and theft" and an order of deportation to Germany and another alien who was "convicted of manslaughter"); *Banyee v. Garland*, 115 F.4th 928, 931 (8th Cir. 2024) (analyzing the detention of an alien who was convicted of "theft, lying to the police . . . possessing marijuana and drug paraphernalia . . . [and] robbery with a dangerous weapon"). But in those cases, besides the detention being based on a different subsection of the statute, the government had demonstrated that the petitioner there was a danger or a flight risk, based on their criminal convictions. That is not the case here. Although the government has provided documentation of a conviction for OWI, it has not demonstrated to an immigration judge that that conviction makes petitioner a danger to the community or a flight risk.

Thus, the Court finds that respondents must provide petitioner with a bond hearing. *See Dos Santos Silva v. Warden*, 8:26-CV-131, 2026 WL 926725, at * (D. Neb. Apr. 6, 2026) ("the proper remedy in this case is to order the government to provide the petitioner a bond hearing, to determine whether the petitioner may be released"). At the hearing, the government will bear the burden to demonstrate dangerousness or flight risk. *See Dambreville v. Noem*, No. 4:25-cv-00514-SMR-SBJ, 2026 WL 602174, at *5 (S.D. Iowa Jan. 12, 2026) ("The Court therefore orders that at the bond hearing, the Government must prove by clear and convincing evidence that Petitioner's continued detention is warranted based on flight risk or dangerousness. This allocation reflects

10

settled practice in redetention cases."). This is so because "[w]hen the [g]overnment seeks to continue detaining someone it previously released, fairness demands that the [g]overnment shoulder the burden of justifying that detention." *Id.*; *see also Trsikurishvili v. Noem*, No. C26-15-LTS-MAR, 2026 WL 594360, at *2 (N.D. Iowa Mar. 3, 2026) (ordering that the government "must provide [petitioner] a pre-detention hearing in which it bears the burden of proving by clear and convincing evidence that [he] is a danger to the community or flight risk or has failed to comply with the terms of his release"). Petitioner's request for habeas corpus relief is **granted** on this ground.

## IV. CONCLUSION

For those reasons, petitioner's petition for writ of habeas corpus (Doc. 2) is **granted-in-part and denied-in-part**. The Court hereby orders that within fourteen (14) days of the date of this order respondents provide petitioner an individualized bond hearing before an immigration judge at which the government bears the burden to demonstrate petitioner's dangerousness or flight risk. Petitioner's motion to proceed in forma pauperis is **denied as moot**. (Doc. 1). The motions for immediate release are **dismissed**. (Docs. 3 & 8). Petitioner's motion to appoint counsel is **denied**. (Doc. 16). The Clerk of Court is directed to close this case.

**IT IS SO ORDERED** this 21st day of April, 2026.

_____
C.J. Williams, Chief Judge
United States District Court
Northern District of Iowa

11